## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **PEGGY J. HOWZE,** | : | Case No. 2:14-CV-00503 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge Kemp |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

### **OPINION & ORDER**

This matter is before the Court on Plaintiff's Objections (Doc. 16) to the Magistrate Judge's January 26, 2015 **Report and Recommendation** (Doc. 15), recommending that the Court dismiss Plaintiff's case and that judgment be entered in favor of the Commissioner of Social Security. Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **SUSTAINED** and the Court **OVERTURNS** the Magistrate Judge's **Report and Recommendation.**

### I.      FACTUAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 25, 2011. In both applications, she alleged disability beginning March 10, 2009 due to depression, diverticulitis, bipolar disorder, back spasms and pain in sides. (Doc. 13-3 at 3).  Plaintiff's claim for disability insurance was denied on September 9, 2011 and upon reconsideration on April 4, 2012.

After her applications were denied initially and upon reconsideration, an administrative hearing was held on December 5, 2012. At the hearing, Plaintiff testified that she was 50 years

old and that she quit her last job in a nursing home in 2009 due to depression. (Doc 13-2 at 47–90). At the hearing, Plaintiff claimed that she still suffered from depression which caused daily crying spells and a complete lack of energy. Despite taking several medications, she still had racing thoughts and an inability to concentrate.

### A. Plaintiff's Medical Records

In terms of the Plaintiff's mental health condition, the Plaintiff was first referred to Dr. Borrero at Jefferson Regional Medical Center for possible depression while undergoing a work-up for chest pain in June 2011. The impression was a major depressive disorder. (Doc 13-2 at 36; Doc 13-7 at 94, 101). Plaintiff was referred by the Bureau of Disability Determination for a Clinical Psychological Disability Evaluation to ascertain the nature and extent of a possible emotional and/or organic disorder. She was seen on August 29, 2011 by Dr. Detore, a psychologist, and was evaluated by means of a Clinical Psychological Interview. According to the psychological evaluation report Plaintiff "reports no previous mental health treatment history."[1] (Doc 13-7 at 198). The impression was a mood disorder, not otherwise specified (NOS), and dysthymic disorder features in the past 5 to 10 years according to the claimant. Dr. Detore concluded that Plaintiff could respond appropriately to work pressures and that she had only slight limitations due to her psychological condition. (Doc. 13-7 at 195). In addition, his written report indicated that Plaintiff's memory and concentration were within normal limits. (Doc. 13-7 at 195).

Plaintiff was referred by her Job and Family Services case manager to Netcare for assistance with medication and help with housing and benefits. Plaintiff was assessed by a Licensed Independent Social Worker, Margaret Hall, on Dec 30, 2011. During the assessment,

---

[1] In the record, there are five medical record entries prior to Plaintiff's application date of March 25, 2011. However, the medical records are related to Plaintiff's physical health treatment including back pain and gastroenterology. (Doc 13-2 at 44—46).

2

Plaintiff said she was depressed on a daily basis, was the victim of traumatic stress, had trouble eating and sleeping, was anxious, and felt hopeless. As a result, Plaintiff was diagnosed with a depressive disorder and her Global Assessment of Functioning (GAF) was rate at 35. (Doc. 13-7 at 218).

After being diagnosed by NetCare, Plaintiff began receiving counseling services at Columbus Area, Inc. Plaintiff received treatment from two Psychiatrists, Dr. Basobas and Dr. Lee. Treatment notes from both physicians, covering the period from March 1, 2012 through October 16, 2012, were entered into the record. (Doc 13-2 at 262–438). The treatment notes were handwritten and largely illegible, but they do state plainly that Plaintiff has the diagnosis of bipolar disorder. Plaintiff filed a letter with this Court from her treating physician, Dr. Basobas, on July 31, 2014 in response to the ALJ's decision. The letter described Plaintiff's current mental health diagnosis as bipolar disorder and intermittent explosive disorder. (Doc. 10).

Plaintiff was treated at Grant Family Practice from April 11, 2012 through September 11, 2012 for physical health. Treatment notes from the Grant Family Practice indicate that Plaintiff was taking medication for her depression and anxiety.

Finally, Plaintiff underwent a Mental Functional Capacity assessment on March 2, 2012. The assessment was completed by Dr. Stinson[2]. He diagnosed Plaintiff with major depressive disorder; however, he concluded that Plaintiff was employable despite a number of moderate limitations in function due to psychological issues. (Doc. 13-7 at 252).

---

[2] The Magistrate Judge refers to Dr. Stinson as a treating psychologist in his Report and Recommendation. It is unlikely Dr. Stinson is actually a treating psychologist. A treating physician is "[a patient's] own physician, psychologist, or other acceptable medical source who provides [the patient], or has provided [the patient], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the patient]." 20 C.F.R. § 404.1502. In this case, there is only one entry into the record from Dr. Stinson for a Mental Functional Capacity Assessment on March 2, 2012. In addition, the Plaintiff denied any knowledge of Dr. Stinson in her Objection to the Magistrate's Report and Recommendation.(Doc. 16 at 2) (stating Ms. Howze, " doesn't even know who Dr. Stinson is why would they assume that she is employable because of documentation read through statements which are combative to her."). This Court concludes that Stinson is not a treating psychologist.

## B. The ALJ's Decision

The ALJ found that Plaintiff met the special earnings requirement of the Act through September 30, 2010. He also found that the Plaintiff had not engaged in substantial gainful activity since March 10, 2009, the alleged onset date. In addition, he determined that Plaintiff had the following severe mental impairments: major depression; general anxiety disorder; and borderline intellectual functioning. (Doc. 13-2 at 32). Despite these findings, he concluded that Plaintiff did not have an impairment or combination of impairments that met the requirements of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Moreover, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some physical exceptions and mental limitations. In determining whether Plaintiff could perform any work, the ALJ evaluated the intensity, persistence, and limiting effects of the Plaintiff's symptoms. (Doc. 13-2 at 36). In regards to Plaintiff's mental condition, the ALJ found no objective medical evidence in the record to support Plaintiff's allegations. *Id.* The ALJ arrived to this conclusion without consideration of the opinions of Plaintiff's treating psychiatrists, Dr. Basobas and Dr. Lee at Columbus Area Inc. The ALJ noted that "claimant did follow-up with treatment at Columbus Area. Treatment notes were received covering the period from March 1, 2012 through October 16, 2012, but notes are handwritten and difficult to interpret." *Id.* However, the ALJ evaluated treatment notes from Grant Family Practice covering the period from April 11, 2012 through September 11, 2012, noting that "the claimant is taking medication for her depression and anxiety and do not indicate that the claimant's mental condition was not under good control." *Id.*

The ALJ gave great weight to the opinions of State agency psychologists Dr. Diorio and Dr. Johnston because they are "well qualified by reason of training and experience in reviewing

4

an objective record and formulation an opinion as to the limitation." (Doc. 13-2 at 39). Drs. Diorio and Dr. Johnston diagnosed plaintiff with affective disorders and borderline intellectual functioning. (Doc 13-3 at 6, 32). Dr. Diorio concluded that "claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (Doc 13-3 at 10). Dr. Johnston concluded that Plaintiff "retains the capacity to carry out instructions for simple to moderately complex tasks in settings which are routine and relatively static, without a fast pace." (Doc. 13-3 at 49). The ALJ further explained that "the mental residual functional capacity assessed gives great weight to the opinion of the State agency psychologist." Therefore, the ALJ held that Plaintiff was capable of performing past relevant work as a mail sorter and other jobs in the national economy. In sum, the ALJ concluded that Plaintiff was not disabled and not entitled to benefits. (Doc. 13-2 at 41).

### C. The Magistrate Judge's Decision

The Magistrate Judge recommended that the Court affirm the ALJ's decision. Despite Plaintiff's failure to file a statement of errors, the Court reviewed the record before making a recommendation as to the dismissal of the case. The Magistrate Judge reviewed the ALJ's decision and found that the ALJ did not err in adopting the findings of the state agency psychologists. *See* 20 C.F.R. §404.1527(c); *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). The Magistrate Judge did not address the ALJ's complete disregard and lack of analysis of Plaintiff's treating psychiatrists' treatment notes.

The Magistrate Judge analyzed the ALJ's opinion and the record and found that the vocational expert's assessment that Plaintiff could perform work was in agreement with the Mental Functional Capacity assessment performed by a "treating psychologist"[3] Dr. Stinson. The

5

Magistrate Judge determined that the weight given to the state agency "did not make a difference in the outcome of the case." (Doc 15). Finally, the Magistrate Judge found that the "ALJ neither committed an error of law in accepting this evidence, nor did he make a decision that a reasonable person could not have made based on the evidence." (Doc 15).

## II. PROCEDURAL POSTURE

The Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income on March 25, 2011. These claims were denied initially on September 22, 2011, and upon reconsideration on April 5, 2012. Thereafter, the Plaintiff filed a written request for hearing on April 24, 2012. The Plaintiff appeared and testified at a hearing held on December 5, 2012, in Columbus, Ohio, represented by attorney Lori Painter. On February 26, 2013 the ALJ found the Plaintiff not disabled under the Social Security Act. (Doc. 13-2 at 41). The Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* on May 28, 2014, and the Court, by order of June 3, 2014, directed the Plaintiff to file a statement of errors within 30 days after the filing of the answer and a copy of the administrative recorded. Plaintiff's statement was due on September 29, 2014, but was not filed. The Court subsequently directed Plaintiff to file a statement of errors a second time, but she failed to do so once again. Plaintiff did file, however, a letter from her treating physician, Dr. Basobas, on July 31, 2014. The letter described Plaintiff's current mental health diagnosis as bipolar disorder and intermittent explosive disorder. (Doc. 10). The letter further explained that Plaintiff's mental health prevents her from obtaining and/or maintaining any employment. *Id.* Despite the absence of a statement of errors, the Magistrate Judge reviewed the record, but, in his Report and Recommendation, failed to note Dr. Basobas' letter. (Doc. 15). The Magistrate Judge issued a Report and Recommendation on December 17, 2014 affirming the ALJ's decision. (Doc. 15). Plaintiff filed

*pro se* her Objections to the Magistrate Judge's Report and Recommendation on December 29, 2014. (Doc. 16).  This matter has been fully briefed, and is now ripe for review.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), this Court, upon objection to a Report and Recommendations, is required to make a *de novo* review of those recommendations to which objection is made. This *de novo* review, in turn, requires the Court to re-examine all the relevant evidence, previously reviewed by the Magistrate, to determine whether the findings of the Commissioner are supported by "substantial evidence." *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir. 1983); *Gibson v. Secretary of Health, Education and Welfare,* 678 F.2d 653, 654 (6th Cir. 1982). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.' " *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without inference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted).

The findings of the Commissioner and proceedings on a claimant's application for social security disability benefits are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Commissioner of Social Security*, 246 F.3d 762 (6th Cir. 2001).  If the Commissioner's decision is supported by

7

substantial evidence, it must be affirmed, even if the court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

Plaintiff is proceeding *pro se*; as such, Plaintiff's pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); *see also Washington v. Comm'r of Soc. Sec.*, No. 1:07-CV-230, 2008 WL 4449428, at *4 (S.D. Ohio, Sept. 30, 2008). Indeed, the Sixth Circuit has determined that, "[t]he rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits." *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (citing *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984)).

## IV. ANALYSIS

Plaintiff asserts that the ALJ failed to evaluate and give weight to Dr. Basobas's treating source medical opinions that she has bipolar disorder and is unable to maintain employment. Plaintiff claims that her impairment "can be established by medical evidence and written documentation, through her [treating] Psychiatrist, Dr. Basobas." (Doc 16). In a letter previously submitted to the Court, which this Court construes as the *pro se* Plaintiff's statement of errors, Dr. Basobas explains that Plaintiffs "current diagnosis does not enable [her] to obtain/maintain any employment at this time." *Id.* This letter is contrary to the ALJ's finding that "[n]o treating or examining physician has indicated findings that would satisfy the severity requirement of any listed mental impairment." (Doc. 13-2 at 34). Indeed, the ALJ afforded ultimate weight to the mental residual functional capacity assessment and State agency psychologists' opinions in determining Plaintiff's diagnosis and her residual functioning capacity. This Court agrees with

8

Plaintiff, and finds that the ALJ failed to weigh properly the credibility of Plaintiff's treating physicians' medical opinions.

When deciding if an individual is disabled under the Social Security Act, the final decision is reserved to the Commissioner. 20 C.F.R. § 404.1527 (2012); SSR 96-2P, 1996 WL 374188 (July 2, 1996). In making this determination, the Commissioner may consider medical opinions presented by the applicant's treating or examining physicians, as well as the opinions of state-sanctioned physicians and medical experts. *Id.* A treating physician's medical opinion is given more weight than a government-employed physician because a treating physician generally has better knowledge of the patient's history and impairments. *See* 20 C.F.R. § 404.1527(c)(1)-(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 854-55 (6th Cir. 1986).  A treating physician is "[a patient's] own physician, psychologist, or other acceptable medical source who provides [the patient], or has provided [the patient], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the patient]."  20 C.F.R. § 404.1502. The Commissioner is not bound by the treating physician's opinion, however, if it is a mere conclusory statement or if it is not based on sufficient medical data. *See, e.g.*, 20 C.F.R. § 404.1529; *Duncan*, 801 F.2d at 854-55; *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

When weighing medical opinion evidence, the ALJ will evaluate every medical opinion received, regardless of its source. 20 C.F.R §404.1527(c). Controlling weight must be given to treating source medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is [not] inconsistent with the other substantial evidence in the case record." S.S.R. 96-2P, 1996 WL 374188 at *5. The opinion should not be rejected if the

9

opinion is not entitled to controlling weight. Treating source medical opinions are still "entitled to deference" and must be weighed using all of the factors described above. *Id.*

The ALJ must provide "good reasons" for not providing treating source opinions with controlling weight. 20 C.F.R. § 404.1527(c)(2). *See also Rogers*, 486 F.3d at 242-43; *Blakley*, 581 F.3d at 408; *Wilson ,*378 F.3d 541, 544. Sections (d)(2) of 20 CFR 404.1527 and 416.927 require that the adjudicator always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion. § 404.1527(d)(2); § 404.927. When the determination "is not fully favorable, e.g., is a denial … the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  S.S.R. 96-2P, 1996 WL 374188 at *5; *see also*, *Prince*, 2011 WL 1124989, at *6-9; *Duncan*, 801 F.2d at 854-55. The "good reasons" requirement allows applicants to understand the outcome of their claim and also provides a basis for "meaningful appellate review." *Wilson,* 378 F.3d at 544. Failure to follow this process amounts to an absence of substantial evidence and requires reversal or remand to follow the appropriate steps. *Id.* at 545. In sum, an ALJ should provide "specific and legitimate reasons" which are supported by substantial evidence in the record when rejecting the opinions of a treating physician. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)*.* Similarly, a "summary rejection" is insufficient. *Blakley*, 581 F.3d at 408.

Plaintiff insists that the ALJ and Magistrate Judge erred by not providing great, if not controlling weight, to her treating doctors' opinions. (Doc 16). Plaintiff urges this Court to find that her "impairment can be established by medical evidence and written documentation, through

10

her Psychiatrist, Dr. Basobas." The record indicates that Plaintiff received treatment at Columbus Area Inc. and was seen by psychiatrists, Dr. Basobas and Dr. Lee, from March 1, 2012 through October 16, 2012. (Doc 13-2 at 262 – 275). The records of Dr. Basobas and Dr. Lee were before the ALJ in Plaintiff's medical records, but they are largely illegible, handwritten office notes. Upon this Court's review of such records, however, it easy to decipher that the Plaintiff was given a diagnosis of bipolar disorder depression at every visit. Despite the clear statement of diagnosis, the ALJ gave no review to these documents because the notes were "handwritten and difficult to interpret." (Doc 13-2 at 36). Indeed, the ALJ never discussed the diagnosis of bipolar disorder in the opinion, and instead determined that Plaintiff suffered from major depression, general anxiety disorder, and borderline intellectual functioning, according to the state-sanctioned physicians and medical experts.

"The regulation requires the ALJ to give good reasons for the weight given to the treating source's opinion and, if this procedural requirement is not met, a remand may be required even if the decision is otherwise supported by substantial evidence." *Toussaint v. Comm'r of Social Sec.,* No. 10-14827, 2012 WL 592198, at *9 (E.D. Mich. Feb. 1, 2012) (citing *Wilson,* 378 F.3d at 544–45). In *Toussaint*, the court found difficulty in evaluating whether the appropriate weight was given to the treating physician's opinion because the treatment notes were largely illegible. *Toussaint.* No. 10-14827 at *7. Accordingly, the court was unable to determine if the ALJ's conclusion regarding the plaintiff's physical condition was accurate or supported by the record. *Id.* The court concluded that "without more information about the content of [treating physician's] treatment notes, the ALJ could not have conducted the required analysis to determine whether their opinions should be given controlling weight and the undersigned is unable to determine whether those opinions were properly rejected." *Id.* The court described a

11

"two-part test from Social Security Ruling 96-5, which parallels the requirements in § 404.1512(e)(1)." *Id.* If both prongs are met, the adjudicator is obliged to recontact medical sources to resolve medical record ambiguities. *Id.* The court determined that both prongs of the recontact rule were met. *Id* at *8. As a result, the court held that a remand to supplement and clarify the treating physician's treatment notes and opinions was warranted and appropriate. *Id.* at *9.

Here, the ALJ concluded that Plaintiff was not disabled and could perform work with limitations based on the residual functional capacity assessment. (Doc 13-2 at 39). Like in *Toussaint*, however, the ALJ did not review treating source opinions because they were largely illegible. This reason is inadequate for failing to grant any weight to the treating physicians' opinions, and falls short of providing Plaintiff with a meaningful disposition of her case. "The requirement of reason-giving exist, in part, to let claimant understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician had deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 545 (quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999). The ALJ failed to follow a "clear procedural requirement" for giving good reasons to claimant for the weight given to such an opinion. *Id.* at 544.

As elucidated in *Toussaint*, well-established rules address this situation and provide recourse for the ALJ, most applicable of which is the procedure for "recontacting" a treating physician. Social Security Ruling 96–5p clarifies "Social Security Administration policy on how we consider medical source opinions on issues reserved to the Commissioner, including whether … an individual is 'disabled' under the Social Security Act." *Ferguson v. Comm'r of Soc. Sec.*,

12

628 F.3d 269, 272 (6th Cir. 2010); S.S.R. 96–5p, 1996 WL 374183 at *1 (July 2, 1996). According to SSR 96–5p, "medical opinions" are defined as "statements from physicians and psychologist or other acceptable medical sources that reflect judgments about the nature and severity of [Plaintiff's] impairments(s)." S.S.R. 96–5p, 1996 WL 374183 at *1.  SSR 96–5p, in emphasizing the importance of evaluating treating source evidence (including opinion evidence), requires that the adjudicator make "every reasonable effort" to recontact the sources for clarification when they provide opinions on issues reserved to the Commissioner.[4] *Id.* There are two requirements that must be met to trigger "the duty to recontact:" 1) the evidence does not support a treating source's opinion; and 2) the adjudicator cannot ascertain the basis of the opinion from the record. *Ferguson,* 628 F.3d at 273; S.S.R. 96–5p, 1996 WL 374183 at *6. When both criteria are met, the ALJ should perform a further investigation pursuant to SSR 96–5p. *See Rogers v. Astrue*, No. 3:10-CV-314, 2011 WL 4479524, at *3 (E.D. Tenn. Sept. 26, 2011).

---

[4] The Social Security Administration regulation details how to satisfy this requirement for resolving medical record ambiguities:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e)(1); *Toussaint v. Comm'r of Soc. Sec.*, No. 10-14827, 2012 WL 592198, at *7 (E.D. Mich. Feb. 1, 2012) *report and recommendation adopted,* No. 10-CV-14827-DT, 2012 WL 592056 (E.D. Mich. Feb. 23, 2012).

In *Rogers*, the court found that significant portions of a treating physician's handwritten notes were illegible. *Id.* at *3. The state disability agency recontacted the treating physician and asked him to complete a supplemental evaluation about the Plaintiff's condition. *Id.* The court found that the agency's recontacting the treating physical was "sufficient record development" pursuant to 20 C.F.R. § 404.1512(e)(1).

Here, the ALJ discounted entirely the opinions of Plaintiff's treating physician without further inquiry into the content of the record. Importantly, the treating sources' diagnosis on Plaintiff's medical records submitted to the ALJ, "bipolar disorder," was not illegible and certainly put the ALJ on notice that more information from the treating physician was required, as it contradicted the diagnosis Plaintiff received from state physicians. Thus, the elements of two-part test for recontacting are met: (1) the evidence from state-agency physicians allegedly did not support the treating physicians' bipolar disorder diagnosis; and (2) the adjudicator could not ascertain fully the basis for the treating physicians' opinions due to the illegibility of their notes.

While the plaintiff bears the burden of establishing disability, the ALJ also has a duty to develop fully the record. *Toussaint,* No. 10-14827 at *9. Accordingly, the Court concludes that the ALJ failed to provide good reason and justification for the weight given to treating source opinions, and should have taken recourse in the recontact rule. 20 C.F.R. § 404.1512(e)(1). Based on the facts of this case, a remand to supplement and to clarify Dr. Babosas' and Dr. Lee's treatment notes and opinions, and afford them appropriate weight, is warranted and necessary.

## V. CONCLUSION

For these reasons, Plaintiff's Objections are hereby **SUSTAINED**. The Court **OVERRULES** the Magistrate Judge's Report and Recommendation. This matter shall be **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

                                       __/s/ Algenon L. Marbley_____
                                       **ALGENON L. MARBLEY**
                                       **UNITED STATES DISTRICT JUDGE**

**DATED: September 8, 2015**